DET082314

# UNITED STATES DISTRICT COURT
for the
EASTERN DISTRICT OF MICHIGAN

**Robert Lance Harnden** and **Pamela Suzanne Harnden**; individually and on behalf of their then minor children: **Robert Lance Harnden II, Darren Jonathan Harnden, Nathan David Harnden, Sara Marie Harnden**; in their own right

        Plaintiffs

v.

**Croswell-Lexington Community Schools**; **Dr. Kevin Miller,** individually and in his official capacity as an employee of Croswell-Lexington Community Schools; **Julie Western**, individually and in her official capacity as an employee of Croswell-Lexington Community Schools; **Officer Ken Western**, individually and in his official capacity as an employee of the City of Croswell Police Department and Croswell-Lexington Community Schools

        Defendants

Case:2:15-cv-12738
Judge: Goldsmith, Mark A.
MJ: Patti, Anthony P.
Filed: 08-05-2015 At 09:39 AM
CMP HARNDEN V. CROSWELL-LEXINGTON C
OMMUNITY SCHOOLS ET AL (DA)

---

**Kidnapping, Civil Rights Violations, Gross Negligence**

Date: August 4, 2015

*Pamela Suzanne Harnden* (signature)

Pamela Suzanne Harnden
8707 Duce Road, Avoca, MI 48006
bpharnden@hotmail.com
810-387-3257

1

Nature of Grievance: Kidnapping, Civil Rights Violations, Gross Negligence

For the sake of being less redundant the U.S. Code and Michigan Code for kidnapping will be addressed together as they both envelope the same concept and law. We took our case to the Federal Bureau of Investigation, Macomb County Office, Michigan, on or about January 10, 2010 with the allegations of kidnapping, perjury and wrong-doing in the court. After a brief investigation Agents Russell Warlick and Louis Fischetti substantiated our claims and proceeded to open a case on our behalf and made a referral to the Michigan State Police to conduct an investigation. Our case remained open after the agents were promoted and was then transferred to Agent Danielle Christenson because the case met the Federal requirements for R.I.C.O.

## 18 U.S. Code § 1201- Kidnapping
(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when-

## Michigan Penal Code Act 328 of 1931
## MCL 750.349
750.349 Kidnapping; "restrain" defined; violation as felony; penalty; other violation arising from the same transaction.

Sec. 349
(1) A person commits the crime of kidnapping if he or she knowingly restrains another person with the intent to do 1 or more of the following:
(a) Hold that person for ransom or reward.

- ☐ On 3 November 2008 Dr. Kevin Miller, superintendent at that time for Croswell-Lexington Community Schools, stated: "And boy do they just harp on us from the State level and from the law level, you must make the call." {audio recording, page 10}
    - The reward granted to Croswell-Lexington Community Schools (School) is to be in good standing with the State (monetary gains).

(2) As used in this section, "restrain" means to restrict a person's movements or to confine the person so as to interfere with that person's liberty without that person's consent or without legal authority (☐). The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts (◊).

- ☐ On Monday, October 20, 2008, our then 7 year old daughter Sara and two of the foster-to-adopt children from Indiana were individually ordered to the office of then principle Julie Western at School to be interrogated by Marnie DeBell, Saint

2

Clair County Department of Human Services (DHS) foster license worker and Jennifer Hutkowski, DHS adoption license worker (strangers to the children).
- On October 9, 2008 DHS Hutkowski visited our home during the day for a mandatory inspection as a part the adoption process. During this visit DHS Hutkowski stated that she did not want us to adopt the Indiana children. (It is our belief that she was of this opinion because the adoption was going to be finalized in Indiana which meant that Michigan would not receive any federal funds for the children as Indiana would maintain jurisdiction.)
- The license workers went to the out-of-county school without any legal authority and for the sole purpose to seize "information" so as to become the reporting person in an effort to open a CPS report against our family.
- The license workers conducted the interrogations during normal business hours in which CPS could have legally obtained proper orders of jurisdiction and permission from the Ukrainian Consulate's Office (UCO), the State of Indiana and Sanilac County Courts.
- Sara was adopted from Kharkov, Ukraine January 17, 2003 and maintains dual citizenship. At no time previous to January 15, 2009 was Sara a ward of any type of the State of Michigan.
- The other two children who were interrogated at Frostick Elementary School by the license workers were wards of the State of Indiana therefore they were not authorized to have "visits" with the children as they were not the "courtesy worker" (Mandy Dalrymple, DHS foster worker) or their Indiana worker Meghan Olds.

☐ On Tuesday, October 21, 2008, at the alleged request of Joseph Linert, then DHS Child Protective Service (CPS) worker, via phone call, School did not allow Sara to board the bus per her normal routine thereby restricting her normal movement and causing great duress.
- Sara was told to sit in the office contrary to her personal whim.
- Sara enjoys dual citizenship therefore both her parents and UCO have <u>legal authority over her unless changed by legal court proceedings.</u>
- The School neither notified nor gained permission from parents or UCO to detain or restrict Sara's movements.
- Per the Order to Take Child(ren) into Protective Custody (OPC), date of entry of order: 10/21/2008, page 2, number 7 the legal authority was **NOT** granted to CPS to enter the premises of Frostick Elementary School, 57 South Howard Avenue, Croswell, Michigan 48422, (810) 679-1100: this line is blank. {pick up order}
- An officer of the law was not present during the execution of the OPC.
- The school is under the jurisdiction of the City of Croswell and/or Sanilac County Sheriff Department, Sanilac County Courts, Sanilac County DHS.
- Our home is located in Saint Clair County.
- The OPC was ordered by Saint Clair County 31st Circuit Court.

3

- The School, to our knowledge, did not require any DHS representative to garnish proper identification or paperwork. This is evidenced by the fact that Principle Western had to call DHS on November 3, 2008 in order to get the names of the workers. {CPS report 10/22/2008, pages 3 & 12}
- The School, to our knowledge, did not require any DHS representative, at any time, to sign in/out of the building per district safety protocol.
- The School, to our knowledge, did not require CPS to sign Sara out of School per district safety protocol.

☐ Sara's school file does not contain a copy of the OPC.
☐ Sometime between November 6 and 24, 2008 School allowed Saint Clair County foster/juvenile justice worker Sara Meddaugh and an unknown worker to give Robert II legal advice for the charges he was facing [(domestic violence/aggravated assault against his minor sister- without parental permission, without a complete investigation and at the request of CPS Linert.){Incident report 08-9382, Saint Clair County Sheriff Department, Deputy Randall Gobeyn}].

- School liaison Officer Ken Western removed Robert II from his class in front of his peers and escorted him to the office like a criminal. Standard procedure is the office staff will call the teacher on the phone and ask for the student to come to the office, which allows privacy to the student. This breach of protocol caused great humiliation and social issues for Robert II and also violates his Fourth Amendment right to privacy, his Fifth Amendment right to due process and his Sixth Amendment right to have a lawyer.
- Robert II had retained counsel for the pending charges.
- To our knowledge, School did not require the workers to sign in/out of the building per district safety protocol.
- Unknown worker photographed Robert II at School.
- There was no adjudication of the case at this time therefore Robert II was not a temporary ward of the court.
- This occurred during regular business hours therefore DHS had ample time to contact Sanilac County Courts to gain legal entry into School.
- This occurred during regular business hours allowing DHS to contact Robert II's retained legal counsel for permission to speak to him in regard to these charges.

☐ Just prior to June 24, 2009, before school was released for the summer, School again allowed Saint Clair County CPS workers Christine Moses and Aquilla Edmond to interrogate Sara during class time. {audio recording, June 24, 2009 TDM, pages 11-17}[At this time there was no adjudication as our plea was overturned May 12, 2009 and we were awaiting trial.]

- This was during normal business hours allowing time for DHS to obtain proper legal permission from UCO and Sanilac County Courts to enter the School.

4

- To our knowledge, School did not require the workers to sign in/out of the building per district safety protocol.
- This continues to violate Sara's right to go to school without governmental intrusion into her privacy, without probable cause and proper due process.
- Sara came home terrified that she was going to be removed from her grandparents' home and be put back in a foster home. She experienced another set of time where she had panic attacks every school day.
☐ On January 4, 2010, School again allowed a St. Clair County CPS worker, Jennifer Henderson, to interrogate the children during the school day without proper legal authorization from UCO or Sanilac County Courts to enter the premises.
- As documented in CPS Henderson's report the children requested their parents to be there during questioning. {pages 7,8}
- As documented in CPS Henderson's report the children felt uneasy and threatened by the government's presence at the School. {pages 7,8}

◊ Nicole S. Harnden (13): October 20, 2008 CPS Linert asked us to take her to a friend's house after the well-child check at the hospital where no services were rendered; October 21, 2008 was moved to the licensed foster home of John and Karen Collins {court case number 06-000798-DM, filed March 24, 2006, indicates that Mr. and Mrs. Collins were not safe with each other but were awarded a foster license, placing my children at risk}, which was out of our school district; around February 17, 2009- moved to paternal grandparents' home and back into original school district; parental rights relinquished and removed from paternal grandparents' home August 15, 2009; never returned home.
◊ Sara Marie Harnden (7): October 20, 2008 CPS Linert sent her home from the hospital stating that Sara was safe; removed October 21, 2008 from school to the Collins' foster home with Nicole; around February 17, 2009 moved to paternal grandparents' home with Nicole; returned to parental home December 14, 2009; released as a temporary court ward March 15, 2010.
◊ Robert Lance Harnden II (15): October 20, 2008 was arrested for domestic violence/aggravated assault and spent the night in the Juvenile Detention Center; October 21, 2008 was allowed to come home; after CPS Linert had Physician's Assistant Brenda Leverenz alter medical records at DHS on November 5, 2008 Robert II was removed November 6, 2008 to paternal grandparents' home without a pick up order {audio, page 10}; returned to parental home January 15, 2009 in exchange for the parents filing a plea (ransom demand); released as temporary court ward December 14, 2009.
◊ Darren Jonathan Harnden (13): after CPS Linert had Physician's Assistant Brenda Leverenz alter medical records at DHS on November 5, 2008 Darren was removed November 6, 2008 to paternal grandparents' home without a pick up order {audio, page 10}; returned to parental home January 15, 2009 in exchange for the parents filing a plea (ransom demand); released as temporary court ward December 14, 2009.

5

- ◊ Nathan David Harnden (11): after CPS Linert had Physician's Assistant Brenda Leverenz alter medical records at DHS on November 5, 2008 Nathan was removed November 6, 2008 to paternal grandparents' home without a pick up order {audio, page 10}; returned to parental home January 15, 2009 in exchange for the parents filing a plea (ransom demand); released as temporary court ward December 14, 2009.
- ◊ Sabastian Doerr (11): foster-to-adopt child from State of Indiana; removed October 20, 2008 without notification to holder of jurisdiction or court order; never returned to our home; allegedly returned to Indiana November 5, 2008.
- ◊ Drake Doerr (9): foster-to-adopt child from State of Indiana; removed October 20, 2008 without notification to holder of jurisdiction or court order; never returned to our home; allegedly returned to Indiana November 5, 2008.
- ◊ Katerina Doerr (8): foster-to-adopt child from State of Indiana; removed October 20, 2008 without notification to holder of jurisdiction or court order; never returned to our home; allegedly returned to Indiana November 5, 2008.
    - o In the video made on July 16, 2008, all three children felt safe enough in our home to disclose to us the sexual abuse they were subjected to while residing in the foster home in Terre Haute, Indiana.
    - o Agent Warlick was given a copy of the video, he subsequently turned it over to the sexual abuse specialist in the office who then traveled to Indiana to investigate the parties involved.
    - o Unfortunately because DHS supervisor Kim Irwin denied the 3200 that we initiated, the children did not receive the in depth physical examinations by the sexual abuse specialist at Children's Health Care, Port Huron, Michigan required to pursue criminal prosecution.
    - o The 3200 was denied because DHS Irwin said the kids were in a safe home now. (July 2008, statement made by courtesy worker Dalrymple during monthly home visit)
- ◊ Robert and Pamela Harnden: November 7, 2008 through approximately November 22, 2008 CPS Linert ordered us to leave our home and reside out of county in order for our sons to be placed with their paternal grandparents, if we refused they would be placed in a licensed foster home like their sisters, however not in the same home.

It is our belief that the very nature of the act of kidnapping violates our rights under the Fourth Amendment of the United States Constitution. [The Fourth Amendment of the U.S. Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." https://www.law.cornell.edu/wex/fourth_amendment; accessed April 9, 2015]

There was no warrant or probable cause for the license workers to go to School to "seize" information from the children. Subsequently the OPC was not issued or

6

executed in a legal manner. The fear and agitation of the children during the interrogations at School as described by the very perpetrators in their reports demonstrates that the minor children were not secure in their persons. The theory that the fruit of the poisonous tree is applicable here and therefore holds School accountable for all actions taken against our family by all parties thereafter (if School would not have violated our rights then our children would not have been kidnapped) however finding School liable for their actions in no way excuses the pursuit of liability of the other parties involved.

Governmental Liability for Negligence (Excerpt)
http://www.legislature.mi.gov/(S(p3135cfqtxqjo1od1mu3szym))/mileg.aspx?page=getObject&objectName=mcl-691-1407

Act 170 of 1964

691.1407 Immunity from tort liability; intentional torts; immunity of judge, legislator, official, and guardian ad litem; immunity of governmental agency under MISS DIG underground facility damage prevention and safety act; definitions.

Sec. 7.
(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily crated task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

> (c)The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

- ☐ The injuries inflicted include, but are not limited to the following:
  - Kidnapping as substantiated by the FBI.
  - Financial ruin.
  - The employees whose conduct caused the injuries were Dr. Kevin Miller, Julie Western, multiple teachers, office staff, and any others who may become known during the course of this complaint.

(8) As used in this section:

> (a) "Gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

7

- ☐ On Monday, October 20, 2008 School allowed out-of-county DHS license workers to interrogate Sara, and two foster-to-adopt children from Indiana during the school day for reasons stated above.
- ☐ The license workers only interrogated the three children under the age of 10 and did not interrogate the other five older children in the middle and high schools. This allowed Ms. Hutkowski to speak on behalf of the children under the age of 10 thereby becoming the reporting person.
    - Sara was not a foster child of any state, at any time prior to January 15, 2009.
    - According to the CPS Investigation Report, 10/20/2008, page 1, Comments: Children are disciplined with a metal rod by Bobby and both parents.
        - This statement was taken from the report made by DHS DeBell during her illegal interrogation of Sara at School. {DHS Special Evaluation Report, page 8, paragraph 3 under 10/20/08@ 11:00 am}
        - At some point during CPS Linert interrogating the children individually and alone in their personal bedrooms the story changed to a stick.
- ☐ Proper documentation of alleged CPS worker was not made:
    - Did not sign in/out of building per district safety protocol.
    - Did not sign Sara out of the building per district safety protocol.
    - On Monday, November 3, 2008 School was still unaware of the identity of CPS worker to whom they released Sara on Tuesday, October 21, 2008. Dr. Miller placed a phone call to Julie Western, then principle, current superintendent, who did not know their names then proceeded to contact DHS for the information. Dr. Miller contacted Pam later in the afternoon with the names of the workers: Joseph Linert and Marnie DeBell. {foster report, pages 3, 24; CPS report dated 10/20/2008, pages 3, 12}
- ☐ The School released Sara to CPS Linert without proper legal authority.
    - Page 2, item 7 of the OPC is blank, therefore he did not have permission to enter the premises.
    - The OPC was issued by State of Michigan 31st Circuit Court- Family Division Court, Saint Clair County and was executed in Sanilac County, Michigan.
    - There was not an officer of the law present.
    - There was not a representative from the UCO there on Sara's behalf.
    - No phone call was placed to the UCO from the School.
    - Samantha A. Lord, guardian ad litem, Saint Clair County, Michigan did not conduct an independent investigation nor was she present during the seizure to be sure Sara's rights were not violated.

8

It is believed that the threshold to prove kidnapping, gross negligence and violations of our rights to due process, life, liberty and the pursuit of happiness by Croswell-Lexington Community Schools has been met and is not limited to the following:

- The School allowed out-of-county license workers (strangers to the children) to interrogate minor children during the school day without proper legal permissions.
- The School denied proper legal representation to the minors during the illegal interrogations, this included neglecting to contact the Ukrainian Consulate's Office in Chicago, Illinois for permission to interrogate their citizen and neglecting to contact the CASA assigned to the children from Indiana to be sure their rights were not being violated.
- The reckless, unlawful actions of School:
  - Lead to the loss of life as we had eight children in our family and we now only have four.
  - Lead to the whole family at one time or another being vacated from their family home.
    - The girls were in a licensed foster home for approximately three months then in their grandparents for ten months, Nicole never returned home.
    - The boys were in their grandparent's home for three months.
    - CPS Linert forced Robert and Pamela to live roughly 60 miles outside of their home for approximately three weeks in order for the boys to be allowed to live with their grandparents instead of a licensed foster home. {audio, November 6, pages 5,7}
    - Lead to CPS Linert removing our sons without a pick-up order. This is contrary to law and was verified to the affect in the Patrick O'Donnell case (Case number 5:02-CV-143, US District Court for the Western District of Michigan, Southern Division, Hon. Gordon J. Quist, July 30, 2004; pages 9-12). {audio, November 6, 2008, page 10}
    - Lead to minor Robert II being arrested and charged with domestic violence/aggravated assault against his minor sister without interviewing all of the family members/witnesses (two biological brothers), without parental permission and without being awarded his Miranda Rights by Saint Clair County Sheriff Deputy Randall Gobeyn, all at the request of CPS Linert. {incident report number 08-9382, narrative: page 3}
      - While housed overnight at the Juvenile Detention Center (JDC) awaiting court Robert II, who was a 4.0 student in all higher academic classes, was forced by the JDC to participate in "schoolwork" that was at least 4 grade levels below his normal and was not AP curriculum.

9

- Lead to Sara finding out that she was adopted and from a foreign country when CPS Linert took her to the licensed foster home.
    - We were the only family Sara had ever known as she was 17 months old when we adopted her.
    - CPS Linert bragged that the home now had a little Russian girl and the foster home then paraded her around like a prize.
    - Sara is not Russian, she is from Ukraine.
    - This violated every essence of our family's right to privacy and freedom form arbitrary governmental intrusions.
    - It is our right as her parents to decide when the proper time to tell her of her past, not the government's.
- Lead to the loss of personal properties that made us happy: vehicles, farm equipment, farm animals, workman's compensation settlement, loss of wages, loss of employment, loss of state subsidies that were being used to remodel the house for our growing family, etc.  These properties were sold in order to pay for all of the expenses that we accrued in an effort to defend ourselves.
- Lead to eventual bankruptcy in which we lost ownership of our home.
- Lead to CPS investigation into the licensed foster home in which CPS Linert placed our daughters.
    - Nicole (13) was exhibiting signs of a sexual relationship with Billy Collins, a 23 year old family member at the Collins' foster home.
    - After an investigation it was determined that there was inappropriateness, however since the girls wouldn't talk about it the case was closed. {CPS report April 2009}
- Lead to multiple abuses hurled upon our family by DHS, including but not limited to:
    - Three psychological evaluations in six months.
    - Repetitive court orders, which caused financial strain and kept us from our children.
    - At a Team Decision Meeting June 24, 2009, DHS members:
        - Stated that we didn't have our children back because they didn't want to give them back. (page 13 of 105)
        - Stated that it didn't matter and they don't care that the child (alleged accuser) lied, they were taking us to court anyway. (pages 47, 48)
    - We were denied due process and a speedy trial.  A few examples:
        - CPS Linert kidnapped our children prior to an investigation.

10

- His report was closed November 13, 2008.
- On November 20, 2008 CPS Linert:
  - Admitted that he did not ask for any of our evidence. {audio, page 3}
  - Gave a ransom for a plea of no contest so he could give our children back. {audio, page 6}
- On November 21, 2008, in front of our attorney, CPS Linert admitted that he did not have a chance to get our statements however we could do that whenever we wanted. {audio, page 5}

- At our trial we were denied our right to face our accuser.
- Detective Colleen Titus investigated our abuse/neglect case on December 16 and 19, 2008 but did not testify in court.
- Robert was not allowed to defend himself.
- We were not allowed to call witnesses in our defense. {limitations given by Judge Elwood Brown, court transcript, May 12, 2009, page 17, lines 10-15; Motion in Liminae}
- Despite the Court stating that hearsay evidence cannot be used to gain jurisdiction {February 26, 2010, court transcript, page 14}, the Court allowed only hearsay evidence against us in trial. {June 16, 2009, court transcript, page 8, lines 3-4; jury trial transcript}
- CPS had Brenda Leverenz, the Physician's Assistant who saw the five children at the hospital, go to DHS on November 5, 2008 and alter medical records to now state that the bruises were consistent with abuse, these alterations were not recognized by a Physician. {medical records; trial transcript, page 54, lines 6-7, 11-23}
  - Mention of this document was used at our Pre-trial as evidence to add our biological sons to the amended petition and take them into state custody.
  - The mention of this document was enough evidence for Attorney Referee Peter Shane Burleigh to accept the amended petition. {November 6, 2008 pre-trial court transcript, page 21, line 15}

11

- - -
      - The children were never seen by a doctor nor were any services rendered at the hospital October 20, 2008. {medical records; court transcript, trial date July 21, 2009}
      - Robert II, Darren and Nathan were not examined at the hospital.
      - CPS report, 10/20/2008, page one states, "No current injuries have been observed."
    - During trial, and under oath, PAC Leverenz admitted that Nicole's injuries were consistent with play. {trial transcript, page 42, line 13}
      - This injury to her finger is what CPS Linert used to have Robert II arrested for above charges.
  - At the Compliance Conference, held on October 15, 2009, to address the potential violations against our foster license the administrator, Kelly Maltby, representative for the Bureau of Children and Adult Licensing, State of Michigan, stated that we should not have lost our children and a case should not have been opened against our family, thereby finding no violations against our foster license. {audio, page 16}
    - Our foster license was administratively closed. {audio, page 22}
  - On October 9, 2009 our attorney, Eric E. Biretta, stated that then DHS director Elreta Dodds was removed from her position for taking us to court. {audio, page 13}
  - During the January 6, 2010 interview at our home, Blaine Goul, CPS agreed that the abuse against our family was coming from DHS management. {video and audio, January 6, 2010}
  - Lead to harassments and threats to our family by the Saint Clair County Courts.
    - One example is during a hearing on October 9, 2009 Judge Elwood Brown threatening to never give our daughter (Sara) back if we don't admit what we did. This was three months after trial. {audio, pages 9-10; court transcript}
    - On February 16, 2010 Saint Clair County Senior Assistant Prosecutor John Walke told our attorney that the (DHS) "superiors got a bug up their ass". {audio, page 7}
  - Lead to my children always feeling unsafe at school as they were forced to participate in multiple interrogations during

12

- the school day by CPS workers who did not possess proper legal authority to enter the premises.
- Lead to the loss of our pro-bono attorney due to the multiple cases brought against our family by CPS which would not have come to fruition had the School followed proper protocol. {audio, February 16, 2010, page 5}
- Lead to the FBI substantiating that our children were kidnapped, there was wrong-doing in the court and perjury by CPS Linert and Deputy Gobeyn. {audio recordings}

Croswell-Lexington Community School's Athletic Handbook (SAH) contains the "Philosophy of Athletics" {SAH, page 1, paragraph 2} and the "Croswell-Lexington Pioneer Athletic Code of Conduct" {SAH, page 2, paragraph 1}. As captains of the sports that they participated in, Robert, Darren and Nathan all gave speeches and pledged to lead their teammates in teamwork, sportsmanship, applying themselves to the best of their ability- and then tutoring their teammates when necessary, and to help lead them down a better path. They pledged as captains that they would apply the Code of Conduct to their lives: both on and off the field, not just during the school year, but year round. These are the standards that are expected from the student leaders of Croswell-Lexington Schools, should not the administration apply the same, if not greater standards to themselves as they are the leaders of the student-leaders? {SAH, page 10, paragraph 7}

As demonstrated above it is clearly evident that the grossly negligent actions of Croswell-Lexington Community Schools lead to our children being kidnapped and multiple violations of the rights awarded to us from the United States Constitution. We are hereby asking the Court to find in favor of the Plaintiffs Robert and Pamela Harnden and award financial compensation of $2,500,000.

We would also ask the Court to award $1,500,000 to each child that came back to our biological/adoptive family: Robert II, Darren, Nathan and Sara, now scarred with the label of being a foster child {audio, November 21, 2008, page 2} to compensate them for the trauma they have endured, none of which would have been experienced by our family had Croswell-Lexington Community Schools obeyed the laws that have been established to protect the citizens of this country from governmental overreach into our personal lives.

We believe that the opinion of His Honorable Gordon J. Quist in the Patrick O'Donnell case (no: 5:02-CV-143, July 30, 2004, pages 48-51 address qualified immunity) allows the civil suit and opens the possibility for the Court to order a criminal investigation into the actions of those individuals who acted outside of their official capacity in the commission of their employment at Croswell-Lexington Community Schools should the Courts see fit.

13

Respectfully submitted,

*/s/ Pamela Suzanne Harnden*

Pamela Suzanne Harnden
8707 Duce Road
Avoca, Michigan 48006
810-387-3257
bpharnden@hotmail.com

August 4, 2015

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

County in which action arose: Sanilac

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Robert Lance Harnden and Pamela Suzanne Harnden, individually and on behalf of their then minor children: Robert Lance Harnden II, Darren Jonathan Harnden, Nathan David Harnden and Sara Marie Harnden, in their own right.

**(b)** County of Residence of First Listed Plaintiff: Saint Clair
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pamela Suzanne Harnden
8707 Duce Road, Avoca, Michigan 48006
810-387-3257

## DEFENDANTS
Croswell-Lexington Community Schools; Dr. Kevin Miller, Julie Western, Officer Ken Western, individually and in their official capacity as employees of Croswell-Lexington Community Schools

County of Residence of First Listed Defendant: Sanilac
*(IN U.S. PLAINTIFF CASES ONLY)*

Case:2:15-cv-12738
Judge: Goldsmith, Mark A.
MJ: Patti, Anthony P.
Filed: 08-05-2015 At 09:39 AM
CMP HARNDEN V. CROSWELL-LEXINGTON COMMUNITY SCHOOLS ET AL (DA)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- ❏ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ❏ 2 U.S. Government Defendant
- ❏ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ☒ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 400 State Reapportionment |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ❏ 410 Antitrust |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ❏ 430 Banks and Banking |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | | | ❏ 820 Copyrights | ❏ 450 Commerce |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 830 Patent | ❏ 460 Deportation |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ❏ 196 Franchise | | | ❏ 790 Other Labor Litigation | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| | | | ❏ 791 Employee Retirement Income Security Act | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ❏ 895 Freedom of Information Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 950 Constitutionality of State Statutes |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding ❏ 2 Removed from State Court ❏ 3 Remanded from Appellate Court ❏ 4 Reinstated or Reopened ❏ 5 Transferred from Another District *(specify)* ❏ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*

Brief description of cause:
I am suing the school for allowing my children to be kidnapped, committing gross negligence and civil rights violations.

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ $8,500,000 total
CHECK YES only if demanded in complaint:
JURY DEMAND: ❏ Yes ❏ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE
DOCKET NUMBER

DATE: August 4, 2015
SIGNATURE OF ATTORNEY OF RECORD: Pamela Suzanne Harnden

**FOR OFFICE USE ONLY**
RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously dismissed? ☐ Yes ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.) ☐ Yes ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

Notes :

**Statement of Jurisdiction**

     ***a. For diversity-of-citizenship jurisdiction.*** The plaintiff is a citizen of the State of Michigan. The defendants are citizens of the State of Michigan and the school has its principal place of business in the State of Michigan. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

# New Lawsuit Check List

Instructions: Put a check mark in the box next to each appropriate entry to be sure you have all the required documents.

| | | |
|---|---|---|
| ☐ | Two (2) completed **Civil Cover Sheets**. | |
| ☐ | Enter the number of defendants named in your lawsuit in the blank below, add 2 and then enter the total in the blank.<br><br>__4__ + 2 = __6__ **Complaints**.<br># of Defendants    Total<br><br>Received by Clerk: _AH_ Addresses are complete: _AH_ | Case: 2:15-cv-12738<br>Judge: Goldsmith, Mark A.<br>MJ: Patti, Anthony P.<br>Filed: 08-05-2015 At 09:39 AM<br>CMP HARNDEN V. CROSWELL-LEXINGTON C<br>OMMUNITY SCHOOLS ET AL (DA) |
| ☐ | If any of your defendants are **government agencies**:<br>Provide two (2) extra copies of the **complaint** for the U.S. Attorney and the Attorney General. | |

| **If Paying The Filing Fee:** | **If Asking That The Filing Fee Be Waived:** |
|---|---|
| ☑ Current new civil action filing fee is attached.<br><br>Fees may be paid by check or money order made out to:<br><br>***Clerk, U.S. District Court***<br><br>Received by Clerk: _AH_ Receipt #: _DET082314_ | ☐ Two (2) completed **Application to Proceed in District Court without Prepaying Fees or Costs** forms.<br><br><br><br><br><br>Received by Clerk: _____ |

**Select the Method of Service you will employ to notify your defendants:**

| Service via Summons by Self | Service by U.S. Marshal<br>(Only available if fee is waived) | Service via Waiver of Summons<br>(U.S. Government cannot be a defendant) |
|---|---|---|
| ☑ Two (2) completed **summonses** for each defendant including each defendant's name and address.<br><br><br><br><br>Received by Clerk: _AH_ | ☐ Two (2) completed **USM – 285 Forms** per defendant, if you are requesting the U.S. Marshal conduct service of your complaint.<br><br>☐ Two (2) completed **Request for Service by U.S. Marshal** form.<br><br>Received by Clerk: _____ | ☐ You need not submit any forms regarding the Waiver of Summons to the Clerk.<br><br>Once your case has been filed, or the Application to Proceed without Prepaying Fees and Costs has been granted, you will need:<br>• One (1) **Notice of a Lawsuit and Request to Waive Service of a Summons** form per defendant.<br>• Two (2) **Waiver of the Service of Summons** forms per defendant.<br><br>Send these forms along with your filed complaint and a self-addressed stamped envelope to each of your defendants. |

**Clerk's Office Use Only**

Note any deficiencies here:

Rev. 4/13